IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| KRISTINA RAE PRENTISS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-18-1073-SM |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Kristina Rae Prentiss (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented under 28 U.S.C. § 636(c) to proceed before a United States Magistrate Judge. Docs. 10, 15.[1] After a careful review of the record (AR), the parties' briefs, and the relevant authority, the court affirms the Commissioner's decision.

---

[1] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the Administrative Record will refer to its original pagination.

I. **Administrative determination.**

A. **Disability standard.**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just h[er] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

B. **Burden of proof.**

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

### C. Relevant findings.

#### 1. Administrative Law Judge's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis in order to decide whether Plaintiff was disabled during the relevant timeframe. AR 15-24; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). Specifically, the ALJ found Plaintiff:

(1) had not engaged in substantial gainful activity since October 19, 2011;

(2) had the severe impairments of an anxiety disorder; a major depressive disorder; and chronic neck pain with radicular symptoms into the hands;

(3) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4) had the residual functional capacity[2] for light work with various additional exertional and nonexertional restrictions;

(5) could perform her past relevant work as a hotel housekeeper; and, in the alternative,

(6) could also perform the jobs of office helper; office cleaner; and bottling line attendant; and thus,

(7) had not been under a disability as defined by the Social Security Act since October 19, 2011.

AR 15-24.

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

### 2. Appeals Council's findings.

The SSA's Appeals Council denied Plaintiff's request for review, so the ALJ's unfavorable decision is the Commissioner's final decision in this case. *Id.* at 1-6; *see Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation omitted). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation omitted).

### B. Issue for judicial review.

Plaintiff argues the ALJ "improperly evaluated the opinion of [Plaintiff's] treating physicians. Doc. 16, at 15-21. She maintains "[t]he ALJ rejected the various treating physician opinions because he found them inconsistent with the record and not supported by 'relevant' evidence." *Id.* at 16 (citing AR 19-22).

4

**III. Analysis.**

    **A. The ALJ's evaluation of the treating physicians' opinions.**

        **1. The ALJ's duty in evaluating medical opinions.**

Social Security regulations define "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). The regulations also advise claimants that, "[g]enerally, we give more weight to opinions from your treating sources . . . ." *Id.* at §§ 404.1527(c)(2), 416.927(c)(2). It explains this is so

> since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations such as consultative examinations or brief hospitalizations.

*Id.*

Binding court precedent underscores the significance of treating source opinion evidence, holding that when an ALJ "evaluat[es] the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser*, 638 F.3d at 1330. At the first step, the ALJ must determine if the opinion "is well-

5

supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* "If the opinion is deficient in either of these respects, it is not to be given controlling weight." *Id.* If the ALJ finds the opinion is not entitled to controlling weight, she must then proceed to the second step of the inquiry to "make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Id.* These factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1331 (quotation omitted).

So long as the ALJ provides a well-reasoned discussion, her failure to "explicitly discuss" all the factors "does not prevent [the] court from according [her] decision meaningful review." *Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007*).*

6

## 2. The ALJ's evaluation of the medical opinions.

The ALJ determined Plaintiff had the RFC to perform light work except she can occasionally reach overhead with the right upper extremity and can frequently use the bilateral hands. AR 17. The RFC assessment also limited Plaintiff to simple and detailed work with occasional interaction with coworkers, supervisors, and the public. *Id.* The ALJ found Plaintiff to have moderate limitation in understanding, remembering or applying information; in interacting with others; in concentrating, persisting, or maintaining pace; and in adapting or managing oneself. *Id.* at 16-17. He discounted Plaintiff's credibility and determined her "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . . The evidence partially supports [Plaintiff's] allegations." *Id.* at 18-19. He noted Plaintiff cares for her seven-year-old son, maintains personal care without limitation, does laundry, prepares meals, drives, shops, pays bills, attends church, and uses money orders. *Id.* at 19. She also reported she had not lost a job because of problems getting along with others. *Id.* He also noted that Plaintiff's mother's third-party report was consistent in reporting these activities. *Id.* In addition, she noted Plaintiff "had an 'ok' ability to get along with authority figures." *Id.*

Further, the ALJ found:

> there have been no surgeries or inpatient psychiatric treatments. Counseling appears to have been very limited with reports of missed appointments. The medical evidence of record routinely shows depression. Many of these records indicate that the claimant reports no symptoms and yet the assessment for depression by the provider is stated as positive. The claimant has gone off medication for anxiety and depression at least twice, only to have her symptoms return. The consultative physical examination, supported by a detailed physical exam, does not support the limits imposed by the claimant's treating providers, who provide no such objective findings in support of their assessments. In order to sort through the many psychiatric assessments that do not correspond to the treatment medical evidence of record, a psychological medical expert was obtained for the supplemental hearing whose assessment and conclusions are essentially consistent with the limitations adopted herein.

*Id.* at 18. Dr. Patricia Griffin served as the medical expert at the supplemental hearing, and testified Plaintiff should "not have any problems with simple, detailed work setting - - nothing that would be complex." *Id.* at 44; *see also id.* at 45-46.

The ALJ gave great weight to the examinations performed by Drs. Robert Danaher and Christina Whelan. *Id.* at 19-20. In his February 8, 2012 report, Dr. Danaher diagnosed Plaintiff with Major Depressive Disorder Recurrent - Moderate Severity Panic Disorder Without Agoraphobia. *Id.* at 479. He found Plaintiff could manage funds and that she had an adequate ability to understand, "remember and carry out simple and complex instructions in a workplace environment . . . ." *Id.*

8

In her October 21, 2014 report, Dr. Whelan diagnosed Plaintiff with Major Depressive Disorder, Severe, Posttraumatic Stress Disorder. Recurrent - Moderate Severity. *Id.* at 608. Dr. Whelan noted Plaintiff's normal Montreal Cognitive Assessment score, and opined Plaintiff could manage her own finances. *Id.* at 608-09. She noted Plaintiff was alert, and had no attention or concentration problems. *Id.* at 607. She gave a "guarded" prognosis and stated Plaintiff "reported symptoms in the severe range which limit her ability to engage in regular work or social activities." *Id.* at 609.

The ALJ gave each of the above opinions great weight as each had an explanation and relevant medical evidence to support them.

Plaintiff points to the following medical records that the ALJ discounted, noting a lack of supporting evidence and/or inconsistency with the record as a whole:

1. July 8, 2010 opinion from Dr. Robert H. Beasley stating "at present . . . [Plaintiff] is unable to perform usual work activities" due to anxiety and panic attacks. *Id.* at 456.

2. November 15, 2010 letter from Dr. Maribel Colon stating Plaintiff's major depressive disorder with anxiety "currently prevents her from engaging in any job activity for the next 6 months." *Id.* at 484.

3. July 7, 2010 medical record from Dr. Colon noting Plaintiff's "[m]arked anxiety that seem [sic] to prevent her from doing apparently 'anything.'" *Id.* at 508.

4. May 15, 2014, March 12, 2015, and January 12, 2016 health examination reports from Dr. Lyman K. Hennon indicating Plaintiff is not employable "at this time" and not employable, respectively. *Id.* at 578.

5. July 22, 2014 mental health RFC opinion from Dr. Marc A. Clanton indicating Plaintiff's impairments would likely cause her to be absent from work "more than" three days a month. *Id.* at 602.

To the extent these records spoke directly to Plaintiff's employability, the Commissioner is correct that such an opinion encroaches on an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1); 416.927(d)(1) (opinions on whether a claimant is able to work is an issue reserved to the Commissioner); *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008) (holding the doctor's "brief statement on the medical form was not a true medical opinion," noting "[i]t did not contain [the doctor's] judgment about the nature and severity of [claimant's] physical limitations, or any information about what activities [claimant] could still perform").

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1); 416.927(a)(1). And, as the Commissioner argues, only one of the above-cited medical records "actually expressed functional limitations." Doc. 17, at 12 (citing AR 602).

The bulk of Plaintiff's arguments that substantial evidence does not support the ALJ's decision stems from her subjective complaints. *See* Doc. 16, at 18 ("The ALJ ignored [Plaintiff] had reported no improvement . . . ."); ("The ALJ neglected to mention [Plaintiff] reported having increased mood swings . . . ."); ("the ALJ failed to note [Plaintiff] only reported a 'mild' improvement . . . ."); ([Plaintiff] complained of feeling down . . . ."); ("[Plaintiff] reported an increase in her depressive episodes."); ("[Plaintiff] complained of increased anxiety . . . ."); *see also id.* at 15-16. Plaintiff does not challenge the ALJ's discounting of her credibility.

The applicable regulations permit the ALJ to give lesser weight, i.e., something less than "controlling weight," to a treating physician's opinion regarding a claimant's impairment if at least one of two conditions is met. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). Specifically, if the opinion is not "well-

supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the claimant's] case record," then the ALJ is not required to give it "controlling weight." *Id.* And in deciding what lesser weight to give such an opinion, the ALJ is required to consider, but need not "explicitly discuss," the six factors mentioned above. 20 C.F.R. §§ 404.1527(c); 416.927(c); *Oldham,* 509 F.3d at 1258. As long as the "ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions," then "[n]othing more [was] required." *Oldham,* 509 F.3d at 1258. Thus, if the ALJ was justified in giving some lesser weight to these opinions and, after considering the required factors, provided "good reasons" for the "diminished weight" he gave to that opinion, then "[n]othing more [was] required." *Id.*

The ALJ was not required to give the treating physicians' opinions "controlling weight" because they were not only inconsistent with the other substantial evidence, but also because they were not "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). And in describing this inconsistency and lack of support, the ALJ provided "good reasons" for assigning those opinions "partial weight." As noted, the ALJ carefully considered the multiple treatment records, opinions, Plaintiff's inconsistent following of medication

12

instructions, and determined Dr. Griffin's testimony was needed to sort through the conflicting treatment records and psychiatric assessments. And, the ALJ's limiting Plaintiff to simple and detailed work with occasional interactions with coworkers, supervisors, and the public accounted for her limitations. Substantial evidence supports the ALJ's decision.

## IV. Conclusion.

For the reasons discussed above, the court **AFFIRMS** the Commissioner's final decision.

**ENTERED** this 18th day of June, 2019.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE